654 So.2d 1267 (1995)
Byron CORONADO, Appellant,
v.
STATE of Florida, Appellee.
No. 94-01129.
District Court of Appeal of Florida, Second District.
May 17, 1995.
*1269 Douglas A. Wallace, Bradenton, for appellant.
Robert A. Butterworth, Atty. Gen., Tallahassee, and William I. Munsey, Jr., Asst. Atty. Gen., Tampa, for appellee.
CAMPBELL, Acting Chief Judge.
Appellant, found guilty of two counts of aggravated battery, argues on appeal that a number of errors occurred at trial and that his convictions and sentence should be reversed. We disagree as to his convictions, but partially agree as to his sentence.
These proceedings stem from an incident that occurred behind a strip shopping center in which appellant, his co-defendant brother and others allegedly beat the victims, Tice and Harbaugh, with sticks, causing various injuries.
Appellant maintains first that the Emergency Medical Service (EMS) run report should have been admitted into evidence because it showed how minor the victims' injuries were. The court refused to allow it because it found the information contained in the report was cumulative to the information the two paramedics testified to while on the stand.
We conclude that the court did not abuse its discretion in disallowing the report in view of the fact that all material facts contained in the report had already been testified to by the two paramedics. Specifically, defense counsel stated that he wanted to admit the report into evidence to "memorialize what happened at the scene and the fact that the injuries were, at best, very minor." (R 325). The transcript reveals, however, that Gibbs, the only paramedic who exited the truck to give assistance, referred on the stand to the injuries as "minor injuries" and "minor trauma." He clarified that the "no injuries" notation in the report was a mistake on his part, that he meant to say "minor injuries, no service," meaning no treatment was given. There was no error in refusing to admit the report. Even if, arguendo, the court should have admitted the report, the failure to do so was harmless since the same information was presented by the witnesses who testified.
Appellant argues next that the stick introduced at trial was not properly identified as the stick wielded by appellant. Although the stick introduced was not specifically identified as the stick used by appellant, it was identified as similar to the one used by appellant and was also identified as a stick that was left on the ground by the perpetrators of the battery. Given the fact that there is no dispute that appellant was wielding a stick and that that stick was what caused the injuries, we conclude that any error was harmless. The jury verdict would not have been different had the stick not been presented. State v. DiGuilio, 491 So.2d 1129 (Fla. 1986).
Appellant argues thirdly that the court erred in allowing one of the victims of the battery, Harbaugh, to testify to a threat from appellant. Specifically, when asked on direct examination where he was employed, Harbaugh responded that he did not want to reveal that information because he did not want appellant to know where he worked. However, evidence of that threat had already been introduced via Tice, the other victim, over appellant's objection. Tice testified that appellant had told Tice to tell Harbaugh that appellant would "kick his ass" if Harbaugh pressed charges. Harbaugh's later reluctance to give his address is merely cumulative of that properly-admitted earlier testimony. Evidence of threats made by a defendant or with a defendant's knowledge is relevant to an attempt to suborn perjury since it indicates a desire to evade prosecution and is evidence of consciousness of guilt. See Knotts v. State, 533 So.2d 826 (Fla. 1st DCA 1988); Manuel v. State, 524 So.2d 734 (Fla. 1st DCA 1988). Although appellant maintains that there is no proof that Harbaugh knew of the threat, that is belied by Harbaugh's *1270 very reluctance to name his employer. There is no merit to this argument.
Appellant also argues that there was insufficient evidence to convict him of aggravated battery on either Tice or Harbaugh. He maintains first that the state did not prove that the stick used to hit Tice was a deadly weapon. He contends that the same reasoning applies to Harbaugh and that Harbaugh's injuries did not constitute great bodily harm.
Although the evidence is conflicting as to whether the stick was a deadly weapon, there was competent, substantial evidence to support the determination that it was a deadly weapon. Since this was a jury question, we will not disturb the jury's determination unless it was clearly in error. We decline to reverse on this point.
Further, Harbaugh did suffer great bodily harm. He suffered a facial fracture, numbness and a great deal of pain around the eye and face. Appellant's characterization of Harbaugh's injuries as a "black eye" is simply incorrect. Great bodily harm has been defined as follows:
Great bodily harm defines itself and means great as distinguished from slight, trivial, minor, or moderate harm, and as such does not include mere bruises as are likely to be inflicted in a simple assault and battery... . Whether the evidence describing such harm or injury is within the meaning of the statute ... is generally a question of fact for the jury.
Owens v. State, 289 So.2d 472, 474 (Fla. 2d DCA 1974). We conclude that Harbaugh's injuries meet this definition, and find no error here.
Appellant's final challenge is to his sentence. Upon review of the sentencing transcript and the written sentence, we agree with appellant, vacate appellant's sentence and remand for resentencing. Appellant was sentenced as an adult under section 39.059(7)(d), Florida Statues (1991) to two four-year prison terms, followed by eighteen months community control concurrent. Under Troutman v. State, 630 So.2d 528 (Fla. 1993), however, the written findings under section 39.059(7)(d), Florida Statutes (1991) must be issued contemporaneously with the written sentence. Here, those findings, although substantively adequate under the statute, were not issued until eleven days following the sentencing. Appellant was sentenced orally on March 18, 1994, and the written findings of suitability for adult sanctions were not filed until March 29, 1994. Although the court specifically stated that the written findings were entered nunc pro tunc to March 18, 1994, this could not avoid the contemporaneous requirement of Troutman. We observe that in resentencing, the court may again sentence appellant as an adult so long as the written reasons are entered contemporaneously. We also note parenthetically that on resentencing, each count must be sentenced separately. The two sentencing orders before us fail in this regard since each one purports to sentence appellant for both Counts I and II in the same order.
In summary, we affirm appellant's convictions, but remand for resentencing because of the court's failure to issue the written findings of adult sanctions suitability contemporaneously with the oral sentence.
FULMER and WHATLEY, JJ., concur.